**Marquis Aurbach Coffing**
Terry A. Coffing, Esq.
Nevada Bar No. 4949
Brian R. Hardy, Esq.
Nevada Bar No. 10068
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
tcoffing@maclaw.com
bhardy@maclaw.com
Attorneys for Plaintiff Gopher Protocol, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Gopher Protocol, Inc., a Nevada corporation, | Case Number: |
| Plaintiff, | |
| vs. | **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF** |
| Discover Growth Fund, LLC, a US Virgin Islands limited liability company, | |
| Defendant. | |

COMES NOW, Plaintiff GOPHER PROTOCOL, INC., by and through its attorneys of record, the law firm of MARQUIS AURBACH COFFING, and files this Verified Complaint for Injunctive Relief against Defendant DISCOVER GROWTH FUND, LLC and alleges and complains as follows:

### I. PARTIES

1. Plaintiff, Gopher Protocol, Inc. (hereinafter "GPI" or "Plaintiff") is and was at all times relevant herein, a Nevada corporation.

2. Defendant, Discover Growth Fund, LLC (hereinafter the "DGF") is and was at all times a US Virgin Islands limited liability company.

## II. JURISDICTION AND VENUE

1. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is diversity of citizenship between the respective parties.

2. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2), being the judicial district of the location where the Plaintiff resides, primarily conducts business and entered into the agreement giving rise to the claims set forth herein. Moreover, the parties have consented to Nevada as an approved location to bring claims in aid of arbitration or for temporary, preliminary or provision relief pending completion of arbitration.

## III. GENERAL ALLEGATIONS

3. Over-the-counter (OTC) refers to the process of how securities are traded for companies that are not listed on a national stock exchange such as the New York Stock Exchange (NYSE) or National Association of Securities Dealers Automated Quotations (NASDAQ). Securities that are traded OTC are traded via a broker-dealer network as opposed to on a centralized exchange.

4. In early 2018, GPI began implementing a strategy to position itself to up-list its stock from OTC stock onto a national stock exchange. The details of this plan were confidential and considered material non-public information not readily available to the general public. As part of the requirement to qualify for a national exchange up-listing, GPI needed to raise funds through new investment and/or by converting its existing debt to equity.

5. GPI's Chief Marketing Officer, Mansour Khatib ("Khatib") was part of the team leading the effort to upgrade GPI's listing. GPI also hired a consultant named Stanley Elbaum ("Elbaum") to locate investors.

6. In or around February 2018, Elbaum obtained and sent to Khatib proposals from a number of investors including DGF.

MAC:15687-001 3764267_1 6/17/2019 6:51 PM

7. In or around October 2018, DGF sent a proposal to GPI which provided capital through a secured convertible debenture.

8. In or around November 2018, Khatib and others met with John Kirkland ("Kirkland") who represented that he was the manager of DGF. During this meeting, Khatib and other GPI representatives discussed with Kirkland the details of its confidential plan to up-list its stock from the OTC to a national stock exchange. The discussion included presentation of cash-flow projections and confidential, material non-public information not available to the general public.

9. Khatib and GPI's other representatives also informed Kirkland that GPI was seeking financing to function as bridge financing while the exchange up-list plan was potentially to be accomplished. As a part of its plan, GPI needed a financing partner that would trade/sell its stock responsibly until the upgrade plan was completed.

10. Kirkland and DGF agreed to GPI's conditions and stated that they would be interested in being GPI's funding partner under these conditions. However, Kirkland represented that in order to expedite the transaction, the parties would need to use the DGF standard forms for the proposed Debenture and that only limited alterations would be acceptable in order to satisfy DGF's investors.

11. Relying on Kirkland's representations regarding DGF's intent to function as the financing partner for GPI and that it would trade responsibly until the upgrade plan was completed, GPI agreed to accept the proposed financing and work within DGF's standard form documents.

## SECURITIES PURCHASE AGREEMENT

12. On December 3, 2018, a Securities Purchase Agreement ("SPA") was entered into between GPI and DGF, pursuant to which GPI issued to DGF a Senior Secured Redeemable Convertible Debenture (the "Debenture") which provided for the investment of about $7,500,000 with a two year maturity. GPI was informed shortly prior to signing the documents that DGF would require GPI to post as security all of GPI's assets including,

without limitation, GPI's Intellectual Property ("IP"). A true and correct copy of the SPA is attached hereto as **Exhibit 1**.

13. The Debenture has a maturity date two years from the issuance date (the "Maturity Date") and required compounded interest on the unpaid principal balance of the Debenture at the rate equal to the Wall Street Journal Prime Rate plus 2% per annum. There was no payment required under the Debenture but interest was payable on conversion or at the Maturity Date. The interest could be paid in shares of common stock. A true and correct copy of the Debenture is attached hereto as **Exhibit 2**.

14. In connection with the issuance of the Debenture and pursuant to the terms of the SPA, GPI issued to DGF a Common Stock Purchase Warrant ("Warrant") to acquire up to 22,500,000 shares of common stock. Consistent with the anticipated exchange up-listing plan, the Warrant allowed DGF the right to purchase additional stock after the Debenture was retired and presumably when the value of the stock had increased. A true and correct copy of the Warrant is attached hereto as **Exhibit 3**.

15. Pursuant to the terms of the SPA, DGF agreed to tender to the Company the sum of $7,500,000, of which the Company received the sum of $4,500,000 as of the closing and three additional tranches of $1,000,000 on the first, second, and third month anniversaries after closing.

16. To date, DGF has received partial payment/redemption on its investment such that principal outstanding balance is $5,410,000.00.

17. Pursuant to the SPA and relying on Kirkland and DGF's representations that they would not interfere with GPI's long term plans, GPI agreed to the Debenture, the shares of common stock issuable upon conversion of the Debenture, the Warrant and the shares of common stock issuable upon exercise of the Warrant.

18. However, following a series of questionable transactions and malicious conduct against the interests of the company undertaken by Kirkland and DGF which were

contrary to the agreement of the parties and in violation of the SPA,[1] it became apparent there were disputes between the DGF and GPI which, pursuant to the express terms of the SPA, required the parties to arbitrate in the US Virgin Islands. Specifically, Section VI(H) of the SPA provides in pertinent part:

> **Arbitration.** Any dispute, controversy, claim or action of any kind arising out of, relating to, or in connection with this Agreement, or in any way involving Company and Investor or their respective Affiliates, including any issues of arbitrability, will be resolved solely by final and binding arbitration in English before a retired judge at JAMS, or its successor, in the Territory of the Virgin Islands, pursuant to the most expedited and Streamlined Arbitration Rules and Procedures available. Any interim or final award may be entered and enforced by any court of competent jurisdiction. The final award will include the prevailing party's reasonable arbitration, expert witness and attorney fees, costs and expenses…

19.  Further, Section VI(I)(1) of the SPA provides in pertinent part:

> In addition to being entitled to exercise all rights provided herein or granted by law, including recovery of damages, each of Investor and Company will be entitled to specific performance under the Transaction Documents, and equitable and injunctive relief to prevent any actual or threatened breach under the Transaction Documents, to the full extent permitted under applicable laws.

20.  "Transaction Documents" is defined under the SPA as "this Agreement, the other agreements, certificates and documents referenced herein or the form of which is attached hereto, and the exhibits, schedules and appendices hereto and thereto." See SPA at Exhibit 1 (Glossary of Defined Terms).

21.  Given the dispute between the parties, and consistent with the express terms of the SPA, GPI filed its arbitration demand with JAMS on Friday, June 7, 2019. See Arbitration Demand, attached hereto as **Exhibit 4**. Thereafter, on June 10, 2019, GPI served and notified DGF that it had filed its arbitration demand. As such, there is pending arbitration regarding the disputes between the parties.

---

[1] Notably, under Section IV(I) there are a number of restrictions placed on DGF including, but not limited to, a restriction prohibiting DGF or any of its affiliates from "engage[ing]or participat[ing] in any actions, plans or proposals which relate to or would result in . . . a sale or transfer of a material amount of assets of Company or any of its Subsidiaries." See Section IV(I)(2)(C).

MAC:15687-001 3764267_1 6/17/2019 6:51 PM

### NOTICE OF SALE OF COLLATERAL

22. On or about May 28, 2019, DGF unilaterally determined that GPI was in default under the SPA, declared all amounts under the agreement immediately due and payable and scheduled the sale and disposition of all of the assets of GPI for 10:00 AM Eastern Time on Monday, June 24, 2019 at DGF's offices in St. Thomas, Virgin Islands. See Notice of Default and Notice of Sale of Collateral, attached hereto as **Exhibit 5**.

23. GPI contests the allegations that it was or is in default under the SPA and has asserted, instead, DGF breached the terms of the SPA and demanded DGF withdraw its Notice of Sale.

24. GPI contests the validity of the Notice of Sale given that it has significant deficiencies including, but not limited to, the contemplated disposition of the GPI Collateral and whether it is commercially reasonable.

25. GPI has made multiple attempts to work with DGF to withdraw its Notice of Sale. Nevertheless, DGF has repeatedly refused to withdraw its Notice of Sale and, as such, it has furthered the dispute between the parties.

26. DGF has failed and refused to withdraw its Notice of Sale. Consequently, DGF has (in addition to all other conduct alleged in the arbitration demand) made clear its intentions to violate the express terms of the SPA. Specifically, DGF has violated Section IV(I)(2)(C) of the SPA which prohibits DGF or any of its affiliates from "engage[ing]or participat[ing] in any actions, plans or proposals which relate to or would result in . . . a sale or transfer of a material amount of assets of Company or any of its Subsidiaries."

27. DGF has made it clear that it intends to unilaterally exercise its chosen remedy before establishing the basis for its claims in arbitration consistent with the SPA.

### IV. CLAIMS FOR RELIEF

28. Plaintiff repeats and realleges the paragraphs above as though fully stated herein.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief)

29. Plaintiff repeats and realleges the paragraphs above as though fully stated herein.

30. An actual controversy has arisen, and now exists, between DGF and GPI as to their conflicting claims, legal relations and rights and obligations under the SPA.

31. GPI is entitled to a judicial determination that pursuant to the SPA:

   a. The parties are required to attend arbitration to resolve any dispute, controversy, claim or action;

   b. That DGF must establish, at arbitration, its allegations and claims prior to disposing of all of GPI's assets; and

   c. That the Notice of Sale constitutes a threatened breach of the Transaction Documents (specifically under Section IV(I)(2)(C) of the SPA which prohibits DGF or any of its affiliates from "engage[ing]or participat[ing] in any actions, plans or proposals which relate to or would result in . . . a sale or transfer of a material amount of assets of Company or any of its Subsidiaries.")and GPI is entitled to injunctive relief,

32. Further, GPI is entitled to a judicial determination that there are deficiencies in the Notice of Sale.

33. A judicial determination is necessary and appropriate at this time and under the circumstances in order for the parties to fully understand their respective rights and obligations under the SPA.

34. The Plaintiff has been required to retain the services of an attorney to commence this action and is entitled to its attorneys fees and costs.

## SECOND CLAIM FOR RELIEF
### (Injunctive Relief)

35. Plaintiff repeats and realleges the paragraphs above as though fully stated herein.

36. Section VI(H) of the SPA provides in pertinent part:

MAC:15687-001 3764267_1 6/17/2019 6:51 PM

**Arbitration.** Any dispute, controversy, claim or action of any kind arising out of, relating to, or in connection with this Agreement, or in any way involving Company and Investor or their respective Affiliates, including any issues of arbitrability, will be resolved solely by final and binding arbitration in English before a retired judge at JAMS, or its successor, in the Territory of the Virgin Islands, pursuant to the most expedited and Streamlined Arbitration Rules and Procedures available. Any interim or final award may be entered and enforced by any court of competent jurisdiction. The final award will include the prevailing party's reasonable arbitration, expert witness and attorney fees, costs and expenses...

37.  Section VI(I)(1) of the SPA provides in pertinent part:

In addition to being entitled to exercise all rights provided herein or granted by law, including recovery of damages, each of Investor and Company will be entitled to specific performance under the Transaction Documents, and equitable and injunctive relief to prevent any actual or threatened breach under the Transaction Documents, to the full extent permitted under applicable laws.

38.  "Transaction Documents" is defined under the SPA as "this Agreement, the other agreements, certificates and documents referenced herein or the form of which is attached hereto, and the exhibits, schedules and appendices hereto and thereto."

39.  Section IV(I)(2)(C) of the SPA prohibits DGF or any of its affiliates from "engage[ing]or participat[ing] in any actions, plans or proposals which relate to or would result in . . . a sale or transfer of a material amount of assets of Company or any of its Subsidiaries."

40.  On or about May 28, 2019, DGF unilaterally and without cause scheduled the sale and disposition of all of the assets of GPI for 10:00 AM Eastern Time on Monday, June 24, 2019 at DGF's offices in St. Thomas, Virgin Islands.

41.  There is a dispute between the parties with respect to the SPA and whether either party is in breach of the SPA. Consistent with the express terms of the SPA, on Friday, June 7, 2017, GPI filed its arbitration demand with JAMS.

42.  Notwithstanding, DGF has failed and refused to withdraw its Notice of Sale. Consequently, DGF has (in addition to the all other conduct alleged in the arbitration demand) made clear its intentions to violate the express terms of the SPA. Specifically, Section IV(I)(2)(C) of the SPA which prohibits DGF or any of its affiliates from

MAC:15687-001 3764267_1 6/17/2019 6:51 PM

"engage[ing]or participat[ing] in any actions, plans or proposals which relate to or would result in . . . a sale or transfer of a material amount of assets of Company or any of its Subsidiaries."

43. GPI seeks injunctive relief prohibiting DGF from unilaterally disposing of GPI's assets and maintaining the status quo until a final determination can be reached by an arbitrator.

44. The Plaintiff has been required to retain the services of an attorney to commence this action and is entitled to its attorneys fees and costs.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant DGF:

1. For a judicial determination that pursuant to the SPA:

   a. The parties are required to attend arbitration to resolve any dispute, controversy, claim or action;

   b. That DGF must establish, at arbitration, its allegations and claims prior to disposing of all of GPI's assets; and

   c. That the Notice of Sale constitutes a threatened and/or actual breach of the Transaction Documents (specifically under Section IV(I)(2)(C) of the SPA which prohibits DGF or any of its affiliates from "engage[ing]or participat[ing] in any actions, plans or proposals which relate to or would result in . . . a sale or transfer of a material amount of assets of Company or any of its Subsidiaries." and GPI is entitled to injunctive relief;

2. For a judicial determination that there are deficiencies in the Notice of Sale;

3. For injunctive relief prohibiting DGF from unilaterally disposing of GPI's assets and maintaining the status quo until a final determination can be reached by an arbitrator;

4. For an award of reasonable attorney fees and costs of suit; and

MAC:15687-001 3764267_1 6/17/2019 6:51 PM

5.   For any further relief as the Court deems to be just and proper.

Dated this 18th day of June, 2019.

                                        MARQUIS AURBACH COFFING

By   */s/ Brian R. Hardy, Esq.*
      Terry A. Coffing, Esq.
      Nevada Bar No. 4949
      Brian R. Hardy, Esq.
      Nevada Bar No. 10068
      10001 Park Run Drive
      Las Vegas, Nevada 89145
      Attorney(s) for Plaintiff Gopher Protocol, Inc.

## VERIFICATION

STATE OF NEVADA    )
                              ) ss.
COUNTY OF CLARK    )

I, Mansour Khatib, hereby declare:

    1.   I have knowledge of the facts set forth herein except as to those matters set forth based upon information and belief, and as to those matters, I believe them to be true and correct. If called to testify, I could and would truthfully testify to the facts set forth herein.

    2.   I am the Chief Executive Marketing Officer, Secretary and a Director of Gopher Protocol, Inc., the Plaintiff in this in the above-entitled action and I have read the foregoing Verified Complaint for Injunctive Relief and know the contents thereof and affirm the same is true based upon my review of the available documents and information.

    3.   I declare under penalty of perjury and under the laws of the State of Nevada (NRS 53.045) that the foregoing is true and correct.

EXECUTED this __ day of _____, 2019.

                                        _____See next page_____
                                        Mansour Khatib – CMO, Secretary and a Director

MAC:15687-001 3764267_1 6/18/2019 8:03 AM

5.  For any further relief as the Court deems to be just and proper.

Dated this __ day of June, 2019.

MARQUIS AURBACH COFFING

By _____
Terry A. Coffing, Esq.
Nevada Bar No. 4949
Brian R. Hardy, Esq.
Nevada Bar No. 10068
10001 Park Run Drive
Las Vegas, Nevada  89145
Attorney(s) for Plaintiff

## VERIFICATION

STATE OF NEVADA     )
                    ) ss.
COUNTY OF CLARK     )

I, Mansour Khatib, hereby declare:

1.  I have knowledge of the facts set forth herein except as to those matters set forth based upon information and belief, and as to those matters, I believe them to be true and correct. If called to testify, I could and would truthfully testify to the facts set forth herein.

2.  I am the Chief Executive Marketing Officer, Secretary and a Director of Gopher Protocol, Inc., the Plaintiff in this in the above-entitled action and I have read the foregoing Verified Complaint for Injunctive Relief and know the contents thereof and affirm the same is true based upon my review of the available documents and information.

3.  I declare under penalty of perjury and under the laws of the State of Nevada (NRS 53.045) that the foregoing is true and correct.

EXECUTED this 18 day of June, 2019.

_____
Mansour Khatib – CMO, Secretary and a Director

Page 10 of 10

MAC:15687-001 3764267_1 6/17/2019 6:51 PM